Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning, counsel. We are glad to have you with us even in these difficult times. We're happy to hear argument in our first case, number 186201. You may proceed. Thank you. May it please the Court. My name is Yotam Barkheim. I'm appearing on behalf of defendant, Appellant Akeem Al-Muwwakkil. I've reserved five minutes of my time for rebuttal. Mr. Al-Muwwakkil was sentenced to 280 months for being a felon in possession of a firearm. Because he received a sentence enhancement under the Armed Career Criminal Act, the ACCA, he was sentenced to more than 13 years more than he would have been otherwise. What this appeal boils down to is whether one of three convictions on which the government seeks to rely qualifies as a violent felony under the ACCA. Attempted rape, burglary, and use or display of a firearm. As I'll explain, none of these three convictions qualifies as a violent felony under the ACCA. Mr. Al-Muwwakkil must be resentenced without the ACCA enhancement. First, as to the attempted rape conviction, the Virginia Rape Statute is indivisible on its face under the Supreme Court's precedent in Mathis and according to Virginia law in the Davidson case. Therefore, the question is whether the Virginia Rape Statute can be The Virginia Rape Statute does not categorically require the use or attempted or threatened use of physical force because it can be committed where the victim is of a particular age or where the victim falls into a particular category. The second of the convictions on which the government seeks to rely is burglary. And here, again, the Virginia Burglary Statute is indivisible on its face under this court's precedent in Cassonday Lewis and under Virginia law. And it is indivisible even based on specific intent. Then, again, the question is whether the Virginia Burglary Statute categorically involves the use or attempted or threatened use of physical force against another. And here, again, the answer to that question is no because the Virginia Burglary Statute can be committed with intents to commit robbery or with intents to commit rape. Robbery is not a violent felony under Winston and rape is also not a violent felony for the reasons that I just stated. The third conviction on which the government seeks to rely is Mr. Al-Muakil's conviction for the use or display of a firearm. And here, the government cannot rely on Mr. Al-Muakil's firearm conviction as a predicate defense under the ACCA under this court's decision in Hodge because the government failed to designate the firearm conviction at sentencing. The government cannot belatedly rely on the conviction now. For the reasons that I've just stated, Mr. Al-Muakil does not have three prior convictions for violent felonies under the ACCA. We therefore ask the court... Counselor, this is Judge Motz. Can I ask you first about the last conviction? As I read your brief, what you've asked for is that we remand to the district court for further proceedings including resentencing. And at resentencing, if the government complied with what you think they must do with respect to the third crime, there's no barrier for giving the sentence that the government gave here, right? Your Honor, that's not quite our position because... I don't know if it's your position. I'm more interested in what the law is. Understood, Your Honor. So the court can remand the case under the mandate rule, can remand the case for a limited resentencing. And what we're asking for, what I meant to say in terms of our position is that what we're asking for is for the court to remand specifically for a resentencing of Mr. Almuakil without the ACCA enhancement. We're not asking for de novo resentencing. So we're asking specifically that he be resentenced without the enhancement which would remove 13 years from his sentence. Well, I understand that, but focus on the last... We do have two qualifying predicates, right? That's correct, Your Honor. You can see that already. So what we're looking for is that third one. Now, if you would focus on your last argument, not the burglary and not the rape, but your last argument, okay? What is to prevent the government from properly raising it in a way that you say they should have this time? Your whole argument hinges on that, right? Your Honor, your... Your whole argument respects... I'm sorry, maybe I'm not saying this clearly enough. Your whole argument with respect to this third crime hinges on whether Hodge was complied with or not, right? Your Honor, that's correct. That's to the last point. So we... Our argument hinges on whether Hodge was complied with, correct. And if on remand the government did comply with Hodge, then there would be three qualifying predicates, right? Well, Your Honor, this court can remand for specifically for not a de novo resentencing where the government can again designate a new felonies. The court can remand and instruct the district court simply to resentence him without the enhancement. But as to whether the government could on a de novo resentencing theoretically designate the predicate, I think that the government could under this court's decision in Rumley. But there are a number of reasons which are pointed out in Hodge and in Winbush as to why that doesn't... Why that is still a problem for the defendant appellate here, Mr. Al-Muwakil. And so those issues include the fact that the burden shifts. So on a resentencing, the burden is on the defendant appellant here. And there are other issues as well for... Yes, Your Honor. Mr. Burkheim, this is Judge Keenan. With the theory and the main concern of the court in Hodge being that of giving the defendant adequate notice, what would be the reason for us to whether or not the sentencing was de novo or limited? Your Honor, if I understand the question correctly, the notice is achieved by providing notice in the PSR specifically of the government's intent to designate a felony conviction as an act of predicate. Here, the government didn't, just like... Right. But if the government could... Yeah. No, what I'm saying is that we were worried in Hodge about the defendant being afforded notice. So the defendant could marshal all the evidence in his favor to show the court why that conviction should not be counted. And if we remanded for a de novo sentencing, the government would have an opportunity, wouldn't it, not to amend the pre-sentence report and proceed on the use of a firearm charge? And why wouldn't that satisfy the concern of Hodge, which is to allow the defendant this time to get all his information together? Your Honor... What's unfair about that? Well, that's exactly the situation that existed in Hodge. So on a de novo resentencing, the government could designate a felony conviction that it had not designated before, but at that point, the government would bear the burden to prove that conviction. There are other countervailing factors as well, such as that the defendant has a right to counsel at sentencing, but not on collateral review. It's more efficient to resolve ACCA issues at sentencing and not years later on collateral review. There are issues involving the preservation of evidence and the accuracy of resolving ACCA issues at sentencing, as opposed to years later on collateral review. So all of those are reasons why it's important for notice fairness, for notice and fairness reasons, to require the government to designate the felony convictions on sentencing in the PSR explicitly as designated felonies. So in that respect, this case is on all fours with Hodge. Counselor, I'm not sure. Maybe we can go through those reasons. Because we live in a real world, as we all know, not an ideal world. And we take your point, it would have been better to designate them first round, but they didn't. And now we're looking to see what needs to be done to comply with Hodge if we should vacate this and send it back to the district court for resentencing. And I understand your reasons, but clearly the defendant would have notice now and an opportunity to prepare, as Judge Keenan said, whatever information and whatever he can say in response to that. And I'm not sure I understand what these other points are. Are you saying that there, what other requirements would need or what would make resentencing on that issue problematic here? I'm just not following your argument. Your Honor, what Hodge says is that the government, in order to provide the notice that is required and the fairness that's required under Hodge, what Hodge says is that the PSR must specifically designate convictions as active predicates. And so on a de novo resentencing, the government would have to specifically designate a... Okay. Okay. I get that. All right. I'm sorry. Sorry. Go ahead. And didn't we say in the United States versus Romney that the government could do that, that that was acceptable for the government to designate new prior offenses as active predicates after de novo resentencing? Yes, Your Honor. This court said that in Romney. That's right. Okay. So, okay. The government would have to do that. What else would have to be done to comply with Hodge and Romney? Well, Your Honor, the government would need to specifically designate a conviction as an active predicate, but that's not what happened here, which is why we're asking for a remand and a resentencing. This is Judge Akey. If I could ask a question. I wanted to understand, counsel, your argument with regard to prejudice, which I can see if the government attempts to present in the Court of Appeals a conviction that was not previously designated in the trial court through the PSR that obviously can't raise it on collateral review. But in this case, you have a fairly old conviction, assuming they used this firearm during an abduction from the 1980s. So is your argument that the intervening couple of years between the original sentencing and a de novo resentencing is the prejudice or is it something else? Your Honor, that is one of the forms of prejudice. That's that's correct. So Hodge and Bush. All right. Well, what's the I'm not sure how many years it's been, but it's only been a couple. What's the difference between and in this case, there would have been, what, 30 years passing between the conviction for using or just playing a firearm in the commission of a felony and the original sentencing in 32 or 33 here. How is that incremental couple of years prejudicial? Well, Your Honor, first, the sentencing happened nearly 20 years ago now. So it has been it has been a number of years since the sentencing itself occurred. And that in and of itself is prejudicial. And then in addition, it is what Your Honor said. It's the additional fact that as I said earlier, and as this court said in Hodge, the burdens flip on collateral review as compared to where they were at the sentencing. There's a right to counsel a sentencing, but not on collateral review. There's also a need for a certificate of appeal ability on collateral review, which obviously is not there as sentencing. So there are a number of reasons why it becomes prejudicial to the defendant to have to litigate an act of predicate here today on collateral review as opposed to doing it on sentencing when the government bears the burden. So if the sentencing were two years ago, and there was a gap of two or three years between sentencing and a de novo resentencing, would that change your answer? Your Honor, I think that the no, the concerns still exist. So the concerns exist in part because of the passage of time and the loss of evidence and the accuracy concerns. But that's certainly not the only issue that exists. And a lot of that, again, as I said earlier, and as the court has said, a lot of that has to do with the burden borne by the government as opposed to the burden borne by the criminal defendant. And the fact that the criminal defendant, for example, has a right to counsel a sentencing, but not on collateral review. There are a lot of reasons that are all laid out by this court in Hodge and in Winbush. There are a lot of reasons why it is extremely prejudicial to a defendant to not have that notice of the act of predicates on which the government seeks to rely and to have to guess at what the government seeks to rely in order to receive the ACCA enhancements. Counsel, I'm sorry. I'll let you go to the two issues that I know you want to talk about. But I'm just really not sure why we couldn't direct the resentencing the way you wish it would. If we wished, we could even say the burden of proof would be on the government. What am I missing? Because I do feel like we're not meeting here. We don't have to agree to at least have to understand what you're saying. Well, Your Honor, the circumstances that you're describing are exactly the same circumstances that existed in Hodge. That's the same situation that existed in Hodge insofar as what the notice in the PSR of the felonies on which the government sought to rely and therefore couldn't object to them. And this court remanded for resentencing of that defendant. And that's what would happen here. My client should have the opportunity on sentencing to fully litigate the ACCA enhancement, the predicate felony of use or display of a firearm, which here he was unable to do because he lacked actual notice in the PSR of the fact that the government would later seek to rely on it. And so Hodge directly controls this case. And I hear that my time has expired, but just to complete my thought there, if I may. So Hodge directly controls this case in terms of the outcome that was ordered there. And we're asking for the same outcome here. Thank you. Counsel, why don't you take an extra five minutes and talk about your other two arguments or whichever one you wish to. And we will give your opposing counsel extra time to. Sure, Your Honor, I'd be happy to. So the moving away from the use or display of a firearm, the attempted rape conviction that Mr. Al-Muakil cannot be relied on by the government as an ACCA predicate offense for the reasons that are stated in our brief and also in the Davidson case. The Virginia Supreme Court's recent decision clearly answers the question of whether the Virginia rape statute is divisible or indivisible. It clearly requires the court to find that the Virginia statute is indivisible. And as a result, the question then becomes whether the Virginia rape statute requires the use or attempted or threatened use of violent force. And because some of the factual means by which the Virginia rape statute can be violated include the fact that the victim is of a certain age or the fact that the victim falls into a specific category. As a result, the Virginia rape statute does not categorically require the use or attempted or threatened use of violent force. As to the burglary, as I stated, the Virginia burglary statute is indivisible even by specific intent. And so the question again becomes whether the Virginia burglary statute can be committed in a nonviolent manner even in looking at the particular intent to commit a particular crime. Those are factual means. Those are not elements of the offense. And here, because the Virginia burglary statute can be committed with the factual means of intent to commit rape, which we just discussed, and robbery, which under the court's decision in Winston is also nonviolent, the Virginia burglary statute does not categorically require the use or attempted or threatened use of violent force. Okay. Mr. Barkay, this is Judge Keenan. Could I back you up just a little bit on your analysis of the breaking and entering with the intent to commit murder, rape, or robbery? And my of the crime that is intent to commit rape is a different element of the crime from intent to commit robbery. And that is a different element of a crime from intent to commit murder. Why aren't these three separate elements of the crime of statutory burglary under Virginia Code Section 18-2-90? Your Honor, they're not different elements because the element of Virginia statutory burglary under 18.2-90, the element as relevant here is an intent to commit a particular crime, but which crime is being committed under the statute is a factual means. And that's based on the plain language of the statute. It's also based on Virginia's model jury instructions, which state clearly that there are two elements, one of which is the breaking and entering, and one of which is the intent. Right. Mr. Barkay, I don't mean to cut across you. And I think you've got a really good argument on that point, but what's hanging me up is what the Supreme Court has said in distinguishing means from elements. And it seems to me that we've got a serious direction from the court in DeKalb looking at the issue of elements and why don't we have distinct elements here in intent to commit murder, intent to commit rape, intent to commit robbery, irrespective of how Virginia instructs juries and irrespective of how we have ruled in robbery and rape. It just seems to me under the whole analysis of the categorical approach and individual indivisible crimes versus divisible crimes, which is federal law, that you maybe have a problem with your argument because these are elements rather than means. Could you address that? Yes, Your Honor. So the well, the first thing that I would say is the Castanet-Lewis case, which is this court's decision on the divisibility of 18.2-90 states that the statute cannot be divided into alternative elements. And we're not aware of any case of this court or another court that analyzes the burglary statute and concludes that it is divisible based on specific intent. But Castanet-Lewis was talking about location. In other words, were you inside the house and stayed in the house or did you turn the doorknob and go into the house? That's clearly talking about means. How did you go about accomplishing the crime as opposed to the distinct concepts of rape, robbery, and murder? So if we don't agree with you that Castanet-Lewis analysis controls, what's your next best argument? Your Honor, our next best argument has to do with the plain language of the statute and the model jury instructions, which under this court and the Supreme Court's decision in Mathis, which are obviously those are federal cases about divisibility. The model jury instructions and the plain language of the statute are looked to and are consulted in determining whether the burglary statute is divisible or indivisible. Okay. Let me follow through if I could, and the last time I promise. In my view of the record, if we disagree with you as to the divisibility of 18-2-90 with regard to the record other than the indictment in the Virginia case? Your Honor, I am not aware of others in the record. Okay. Thank you. On this same point, can I ask you just one question that might be yes or no? Is it your position that when you're dealing with intent, that that can never be an element? Your Honor, we would not take the position that intent can never be an element, but here the intent to commit a particular crime is one of the two elements of this statute. No, no, I understand your position. I just wondered how far this argument went. No, we would not take the position that intent can never be an element, no, Your Honor. Okay. Counsel, this is Judge Agee. Let me ask you along that line. Is it your view that in giving the jury instruction on statutory burglary, if there was evidence of an intent to commit murder, an intent to commit rape, an intent to commit robbery, that the jury could be exempt from all of those and unanimity would not be required? Yes, Your Honor, that's our position. That's similar to what the Virginia Supreme Court and the Virginia Court of Appeals said in the Davison case, which is that in the context of the rape statute or the sexual assault statute, the jury does not need to be unanimous as to the particular factual means. So here, looking at the Virginia burglary statute, the jury does not need to be unanimous as to which of the crimes listed in the statute the defendant needed to have the intent to commit. The jury just needs to be unanimous as to the fact that the defendant needed to have the intent to commit one of them. I was going to ask, do you have a Virginia case that supports that view of the jury instruction? Specific to statutory burglary. Right, I see what Your Honor is asking. The jury instructions are discussed and interpreted in this court's decision in Cassandre Lewis, which is not a Virginia case, but they are relied on by this court in that case. But Mr. Barkley, Judge Keenan, again, the indictment in the state court case said breaking and entering with the intent to commit murder. So how could the jury return a verdict saying that he broke and entered with the intent to commit rape? You're saying when the indictment specifies the intent to commit murder, that the jury could come back and he could be convicted on intent to commit rape? Your Honor, that's not quite what we're saying. We acknowledge that's what the indictment says, but the indictment did not need to say that under Virginia law. Right, but it did say that. Yes, Your Honor, but the categorical approach states that unless the statute is divisible, we're not supposed to look to those materials. So the categorical approach is about whether the statute is categorically violent or nonviolent, just based on what the statute says, as well as what Virginia law and model jury instructions and so on say. So as a result, what the indictment of Mr. Almuakil said here is not relevant to the categorical approach. It's simply whether... Unless we disagree with you and find that it is divisible, then it's highly relevant, isn't it? Yes, Your Honor. I heard a ringing which indicated that my time may be expired. I'm not sure. You have other... I think that's right. Thank you, Your Honor. Do my colleagues, Judge Kinney or Judge Agee, do either of you have further questions? No, thank you. No, thank you. Thank you so much, counsel. Thank you. Good morning, Your Honor. My line cut out for a moment. Are we all right to proceed? Right. I'm glad to have you back. Thank you, Judge Moss. May it please the court, because the defendant has conceded the existence of two violent felonies. The court really need only address one in deciding or need only find one in order to affirm. And as our briefing lays out, there's multiple paths to that affirmance, we think. Some are more procedurally complex than others. Given the court's questioning of my friend on the other side, I thought I would start with the remedies for the use of a firearm prior conviction. I think, assuming that the court disagrees with the government as to the existence of actual notice in the PSR and the applicability of Hodge, I think our position is that Rumley requires a de novo resentencing in this context. I think Rumley did not just say this was permissible, but actually looked to 3661 about the limitations of information that can be introduced in sentencing and the Supreme Court's decision in Pepper, and said that essentially artificially curtailing what can be considered on a resentencing would contravene that area of the law. So in that context, even if the government were to do all of the predicates as a matter of collateral review, the remedy here is appropriately a de novo resentencing at which, as your honors pointed out, defendant would again be entitled to counsel, or the government would bear the burden of proving the existence of the prior convictions by preponderance of evidence, and so forth and so on. So all that to say, I think Hodge sort of ends at the collateral review stage and says the appropriate remedy is resentencing, whereas Rumley is the decision that controls what happens after the order for resentencing and what information needs to be available to the court in the subsequent resentencing. So just so I'm clear, because this is a little bit of a complicated case, there's nothing that a defendant's counsel has said that he would need, that his client is entitled to on the resentencing for this count that the government does not agree that he is entitled to. Is that correct? I think that, I'm not sure I understand your question, Judge Moth. I think the concerns that animate Hodge, the existence of notice, the relative burdens between the defendant and the government on collateral review and the right to counsel, all of which would then be sort of back in their original state on a de novo resentencing, once the government can rely on that, once we're in that phase, the government can then present its evidence of a qualifying prior conviction, and we end up again with the same sentencing range. And who would the burden be on? I believe in the same as in an ordinary sentencing, Your Honor, the government would bear the burden to prove facts that establish sentencing by a preponderance of evidence. Right. The only thing that I can come up with in my notes, and maybe your colleague on the other side will correct me, is the prejudice problem. That Judge Agee discussed with your colleague. So I think the prejudice inquiry is relevant to whether this court needs to remand for resentencing on collateral review at all. Given the age of the conviction, it actually sort of hurts the government more in the sense that we don't have the records anymore. If it's your burden. Right. If it's our burden, the age of the conviction and the length of time sort of works against us, because we then have to reprove it in the second resentencing. So I don't think that's a consideration for the resentencing area. We framed this argument as sort of the back end of collateral review on harmlessness, where the fact of the conviction was proved at the initial sentencing, and there's nothing in the record that indicates that it's vulnerable. And so where we're able to make an argument, and defendant has counsel in this case, and is able to argue against the existence of use of a firearm being a violent felony, we think this sort of falls into a harmlessness analysis on collateral review, even where Hodge says this was error in the first place. And Hodge didn't address harmlessness, so it's sort of a lacuna in the law about what to do when Hodge says there's been an error, but there's a harmlessness argument on the back end. So we sort of framed it as if we would be able to prove this again in resentencing, and we meet the harmlessness standard in collateral review in showing that, then the court doesn't need to remand for a resentencing at all, because the error didn't have a substantial and injurious effect on the conviction. But that is no longer your position, given Rumley? Is that right? I don't understand why that is your position in front of us right now. We would make both arguments, Your Honor, that there is an appropriate harmlessness review, and I think Rumley confirms that the error would be harmless, because we would just be back here on the exact same posture, the same sentencing range would apply, the same statutory range would apply after the resentencing. So we're saying that because Rumley sort of necessarily says we are able to introduce evidence of this, and we'd end up with the exact same sentencing range, there actually isn't a substantial and injurious effect on the defendant's sentence for purposes of collateral review, and no remand is necessary at all. The court might disagree with us on that, but it sort of operates in two separate phases. I thought I would move to, unless the court has any more questions on sort of Hodge's remedy context, I thought I would move to what I think is probably the simplest ground for affirmance in this case, which is the burglary conviction. We obviously disagree that Kessendit-Lewis controls that, dealt with the enumerated offenses clause, and the holding of that case is that Virginia robbery is broader than generic federal burglary, and the means element distinction discussed in Kessendit-Lewis were just locational and temporal, not the specific intent component. I think for purposes of Virginia law, I think the cases of Taylor from the Virginia Supreme Court, and then the en banc decision in Maynard from the Virginia Court of Appeals make it clear that the Commonwealth, when charging someone with a specific intent burglary, is required to charge exactly one specific intent, and then prove that specific intent. In Taylor, for example, the Supreme Court said that it's not permissible even in dealing with a statutory burglary statute that says for a felony or has intent to commit some felony, that you can't just charge a felony, you have to name the felony and then prove that felony to the jury. Similarly, in Maynard, which dealt with the generic burglary statute in Virginia, which says breaking and entering a dwelling in the nighttime to commit larceny or a felony, the Virginia Court of Appeals said you charged larceny, but you didn't prove larceny, you only proved an intent to rape. Now, an intent to rape would be another felony, so I think that cuts against defendants' argument that a jury could non-unanimously find different specific intents and it would still be a valid conviction. I think between Taylor and Maynard, Virginia burglary really has to be limited to specifically one. So counsel, this is Judge Agee. If I could ask you questions similar to what I asked opposing counsel, is it your view then under Virginia law that if the indictment was worded so that it was the intent to commit murder, rape, or robbery, would that be a valid indictment? I don't think so, Your Honor. I think Taylor demonstrates the way that it would have to be indicted. In Taylor, there were three specific burglary counts in the indictment and each charged a different specific intent. So my understanding of Virginia law, and I realize who I'm talking to in this context, but my understanding of Virginia law is that the indictment would have to charge them at separate counts because the different specific intents would be required to be proven in that context. So I don't think you could sort of disjunctively charge specific intents in a single count of the indictment. So long as the, to follow what I understand your argument to be, is in this case the indictment charged I believe only murder, that that would be decisive in the divisibility analysis in your view that the indictment having been circumscribed in that way restricts the analysis only to that one particular crime for intent? Correct, Your Honor. There is no way this defendant could have been convicted on any specific intent other than murder. Okay, but Mr. Grano, if the crime then as charged in the indictment, which it was, is burglary with the intent to commit murder, it doesn't require, the intent to commit murder doesn't require the use of force or attempted use of force, does it? I think it does. Well, if I break into my old boyfriend's house, okay, I have no permission to enter, I still have the key, I break in and I want to kill him. I'm just tired of it, tired of his existence, okay? I have a gun in my backpack, it's loaded. I break in and then somebody catches me. I have broken and entered with the intent to commit murder, but I haven't attempted a use of force, have I? Because I haven't taken any step other than the breaking, I haven't taken any step to commit murder, have I? Well, yes, Your Honor, because I think you have. I'm sorry, because I think Virginia law, doesn't it pretty clearly break down that an attempt crime can be proved either by a statement or by conduct? And so you don't have to have conduct in particular if I have that intent and I told Judge Motz I was going to opt to kill my boyfriend and then I committed the act of breaking and entering, how would I have committed force with regards to the crime of attempted murder? Of course, there are two points I think that I'd like to make in response. The first is that what constitutes an attempted use of force here should be defined exclusively by federal law because we're not dealing with an actual Virginia attempt crime. So we're not doing the same kind of analysis that Dozier does where you have to compare the elements of the state attempt crime versus the federal attempt crime. Our argument is that the co-late crime of burglary with intent to commit murder is for federal purposes an attempted use of force because breaking and entering the acts required for burglary are a paradigmatic black letter substantial step towards accomplishing the intent to kill, which is a specific intent to use deadly force. So that's step one. And step two is I think the Virginia standard on Virginia law is an act that accounts as the commencement of the consummation of the crime. So to the extent there was any kind of analysis that required looking at the Virginia standard versus the federal standard, I think Virginia may even be a little bit more restrictive on what constitutes an attempt. You're saying the act of breaking and entering is a sufficient use of force for purposes of the ACA? No, Your Honor. I'm saying that it is a substantial step that qualifies in the attempted use of force analysis. So if we look at this court's decision in Pratt, which cited the model penal code for the standard for attempt, unlawful entry into a structure or a vehicle is listed as a paradigmatic substantial step towards completing a crime. And here, the other element of federal attempt is a specific intent, and here the intent is to kill, which is to use violent deadly force. So we're saying that when you pair an intent to use deadly force with an act that by definition constitutes a substantial step towards accomplishing that intent, you have committed a federally attempted use of force. I don't know if I'm explaining that correctly. No, I understand what you're saying. Okay. I understand. I think the difference is that in most cases, we're dealing with whether or not a state attempt crime constitutes a federal attempt, meets the standard of an attempted use of force for federal purposes, and here it's a co-ed crime that also happens to be an RBU, a federal attempt to use force. But I think that this actually is reflected in Virginia's own structuring because an attempted murder in Virginia is actually a less serious felony than burglary with the intent to commit murder, rape, or robbery. And so, you know, in Virginia's eyes, this is the more serious offense, and in RBU, too, this is perfectly consistent with Congress's intent to punish serious acts that were designed as an attempt to use force. And so where... Yeah, you're saying then that there doesn't have to be any attempted use of force to show murder other than the act of burglary? I'm saying that burglary constitutes a substantial step. I mean, the breaking and entering. The breaking and entering is sufficient to show the attempted use of force to establish... Only... The attempt to commit murder. Only where, as an element, the burglary statute also requires an intent to use violence as a force. So I would not say, for example, burglary, generic burglary to commit larceny, constitutes an attempted use of force. I think where, because we believe the Virginia statute to be divisible, where the act of breaking and entering is conjoined with a specific intent to use violent force, you have, in essence, created an attempted use of force crime. And to Judge Keenan's question about the Shepard document in the record showing this, I would note that the defendant actually pled guilty to this offense. So on page 92 of the joint appendix, it has the defendant's guilty plea to the indictment as charged. So we know that this was, in fact, the crime that the defendant was charged with and then pled guilty to as amended. It initially had a well-armed-with-a-deadly-weapon enhancer that was then struck out, I assume, as a result of plea bargaining. So I think the Shepard document that's relevant here established that this defendant could have been convicted of only burglary with the specific intent to commit murder. Right, but you do agree there are no other Shepard documents than the indictment in the state court case. Is that correct? Correct, the indictment and the record of the guilty plea, which I think are two separate documents in Virginia, but yeah. Oh, and the other point I wanted to make on this is my friend said that we don't look to the indictment when determining whether or not a statute is divisible, and I disagree slightly. In MAPIT, Justice Kagan actually said that by looking to things like indictments, we can determine how state prosecutors charge offenses and where you charge only one of alternative terms in a statute. That's an indication that it's charged as an element as opposed to being charged as alternative means. And I think we have that illustrated in our indictment here, which charges alternative temporal means in the daytime or in the nighttime, but includes only one specific intent as to murder. So I think that's further evidence that in Virginia these indictments are charged separately with each specific intent forming a separate crime. Have you found another case in which intent has been regarded as an element of crime? Well, Your Honor, I'd say in Virginia. Do you mean, Your Honor? Well, yes, but give me one anywhere. Okay. So, well, in Ridley in 1979, the Virginia Supreme Court said that when a specific intent is necessary with an act, it combines to form, becomes a necessary element. So, and there's a line of cases in Virginia Supreme Court saying that the specific intent becomes an element when it's charged in, when a statute requires it in conjunction with a particular act. And then I would also note that this court's decision in Townsend, which was assault with a deadly weapon with a specific intent to kill, I believe from North Carolina, the court looked at specific intent to kill as an element of that offense and said, because the statute requires a specific intent to kill, it necessarily requires sort of a minimum and attempted or threatened use of force because the person is attempting to use deadly force. And then there's some other acts, in this case, assault with a deadly weapon that counts. Maybe you're answering this question, but I'm not sure if you are. It seemed to me that you were trying to line this up with the earlier case that we had, I guess Judge Diaz or Judge King's case that talked about the temporal elements being separate elements. And you were saying that the intent elements here were two, and I just wasn't familiar with this in any of our recent ACCA cases where we looked at different intents as elements of the crime. Are you answering that question? I think so, Your Honor. I think in Townsend and in Burns-Johnson is the other one that I'm thinking of. The court conducted an analysis... Sorry, Burns-Johnson is different. It was robbery with a dangerous weapon. Oh, so here's some counterexamples. So for Simmons and Mills, this court held that reckless assault with deadly weapons because the relevant state statutes could be committed recklessly, that that wasn't sufficient to show that these were uses of force. So I think in a similar way, we can look to the specific intent to kill, as the court did in Townsend, as an indication that the intent in the state crime matches the intent required in the federal crime, which for our purposes would be an attempted use of force requiring what we think is a specific intent to use violent force. I think I'm asking you a somewhat different question, and that is... OK, I apologize. Well, maybe I'm not clear. I'm sorry, not clear. But I thought you were saying that there were three separate crimes here because it was the intent to commit three separate crimes, right? Is that true? So I think the Virginia statute divides into... has as alternative elements three different specific intents. But that would make it divisible along those lines, right? Correct. Because of the three... Yes. And what I was asking is, you know of another case in which courts have held that. They've had two or three or five or whatever different kinds of intent, and they've divided it, the statute, the divisibility analysis along those lines. I see. No, Your Honour, I'm not aware of one off the top of my head. I would imagine... Given the way some states structure their code, there might be sort of lesser-included and greater-included versions of the offense. And so the court may have done divisibility analysis dividing by specific intent based on sort of reckless assault versus intentional assault or so on. But I don't have a specific case. If Your Honour likes it, I would be happy to submit a supplement. No, no, no, that's fine. Okay. No, standing here, I don't have a case where the individual intents in a statute were the basis of the divisibility analysis. Do you have anything further? Not unless Your Honour wishes me to discuss the impact of Davidson and the attempted rape count, I would be happy to talk about what we think separates, but I realize I may be at the end of my time. Okay. Yeah, Mr. Vandal, let me follow up on your point saying that the act of breaking is enough force to establish the attempted use of force. How can opening a door with a key qualify as a use of force under Johnson? So, Your Honour, I don't think... You've still got to meet the Johnson definition. Excuse me one sec. You've still got to meet the Johnson definition, don't you? I agree for uses of force, Your Honour, but not attempted uses of force. So our position is that the separate attempted use of force in the elements clause does not require actual force to be used as long as the crime meets the definition of a federal attempt, that is, the specific intent to use force, and a substantial step towards accomplishing that use of force. See, Mr. Vandal, what I'm worried about is that one of us is off base here, and my concern with your argument is that perhaps, and I've got to think this through, but perhaps you're equating burglary with the intent to commit murder into an attempted murder, and you don't have to show the attempt. You have to show the intent to commit murder, and if the defendant has the intent to commit murder and took the step of breaking into the dwelling, that you could have burglary with the intent to commit murder irrespective of any attempt to commit murder. Does that make sense? I think I understand where we're coming on, but I think I just disagree. I think that in our view, it's not required that it be an attempted murder as charged in the state, for example. But let's say the charge was attempted murder, and the substantial step in the case in an attempted murder trial was the breaking and entering of a house. Under the model penal code and federal law, that is a sufficient substantial step to constitute attempted murder. Right, but we're talking about Johnson and the use of force in order to qualify for ACCA, and how does opening a door with a key qualify as the use of force under Johnson? I don't think it qualifies as a use of force, Your Honor. I think it qualifies as an attempted use of force, and this may be the distinction that I haven't made clearly yet. So in the elements clause, a crime could be a violent felony if it involves the use of force or the attempted use of force or the threatened use of force, and we think those are all independent requirements. And so something that doesn't actually involve the use of force still must necessarily be a violent felony if it constitutes an attempted use of force. And in interpreting what the attempted use of force in 924E means, we look at federal law because attempt is a common law term, and so when Congress uses the term attempt, we assume that it's importing the common law meaning. So to be an attempted use of force, our view is that the government would have to prove that the defendant specifically intended to use violent force and took a sufficiently substantial step towards accomplishing that use of force, and that constitutes an attempted use of force. Go ahead. The interesting thing about this case, which I think makes it more confusing than it sometimes needs to be, is that the substantial step in this case is its own completed crime, in this case, burglary. So in a case in which you had been charged with attempted murder or even federal attempted murder and the substantial step was breaking and entering a vehicle, that would be sufficient to constitute attempted murder. So burglary with the intent to kill in Virginia is a variation or a very specific type of attempted murder almost for federal purposes. Okay, thank you. Mr. J.G., do you have any further questions? No, I do not. Judge Keenan, do you? No, thank you. Thank you very much. I understand your argument. Thank you. Your Honor, I'd like to focus on the Hodge issues, if I may, on rebuttal, that the panel was concerned with. Mr. Burkheim, this is Judge Keenan. I think you also, I would advise you to focus on Mr. Grano's argument with regard to burglary with intent to commit murder. Yes, I'd be happy to, Judge Keenan. So to address Hodge quickly first, then, either argument made by the government, either viewing this in terms of harmlessness analysis or under Rumley in terms of a de novo resentencing, either outcome would be a gutting of Hodge, which obviously controls this court. So what the court said in Hodge is that if the predicate felony, if the PSR does not designate as predicate felonies the specific convictions on which the government seeks to rely, then the defendant is not on notice of the need to challenge those convictions as predicate offenses under all of the burdens that we've been discussing that apply to that stage in the criminal proceedings. Here, moreover, Judge Dumar, who performed the sentencing, as we said, approximately 20 years ago, was operating under a mandatory guidelines regime and clearly was displeased with the sentencing range that resulted and said at sentencing that he did not like the sentence that he was, the sentence guidelines that resulted from the calculation. So it would be conjecture to say that the result would be the same, that the sentencing range would be, that the sentence would be the same, to say that the posture years later in collateral review would be the same. So for that reason, we can't say that harmlessness analysis applies here. And similarly, the fact that Rumley said that the government may later designate a conviction as a predicate offense on a de novo resentencing, that also does not, that does not mean that the court should not order a resentencing here. Either viewing this through the lens of Rumley or through the lens of harmlessness analysis, it's crucial under Hodge that the defendant receive actual notice of the government's intent to designate a violent felony in the PSR so that the defendant can challenge it. And to say that the result would be exactly the same is I think incorrect in light of what the judge said at sentencing and the mandatory guidelines that applied. And in any event, even if it ended up being correct, it's certainly conjecture of the type that is not well suited to affirming a sentence that is, as I said earlier, 13 years longer than it would have been otherwise. Unless the court has further questions on the Hodge issues, I can move on to the burglary issues. We obviously disagree with the government as to the divisibility of the statute. The statute is, in our view, indivisible on its face and under the Virginia model jury instructions. And although the government seeks to rely on the indictment under Mathis, in our view, there's no need to go to the indictment when the statute is clear. The panel's questions we think were identified correctly, but the government does not identify any case law and cannot point to a case in which this court or Virginia court identified a statute as being divisible based on different elements of intent. So here, while obviously we can see that the indictment happens to specify a particular intent to commit a particular crime, it was not necessary under Virginia law for the indictment to do so. Okay, Mr. Burkheiser, please get to answer Mr. Grano's point. He's saying that you can show attempted use of force under Johnson by the act of turning a key in a lock if you do so with the intent to commit murder, that the attempted use of force under Johnson is satisfied by the act of breaking sufficient to qualify as the attempted use of force under the act. Yes, Your Honor, we disagree with that position, and it's not a position that's supported by any of the case law on the ACCA, as far as we can tell. The government didn't identify any case law just now that supports it. The intent to commit murder, although we obviously disagree that the statute is divisible into that particular crime, but even if it were, the intent to commit murder does not mean that the act of burglary involves the attempted or threatened use of force, which means the attempted or threatened use of force under Johnson means an action that is capable of inflicting violence on an individual, and simply breaking and entering into a home with intent to commit murder, even if it were a crime, does not carry with it that attempted or threatened use of force. So we certainly would disagree with the government on that score. I heard my time expire, but I'm happy to answer any additional questions on that if the panel has additional questions. Ms. Barca, I just want to be sure that you fully responded to Judge Keenan's concerns. Judge Keenan, are you satisfied with that answer? Do you want to pursue it a little more? Well, I understand his answer. I think it's a close call, but I don't know that further questioning will help in that regard. Do you have anything more to offer to us? It was, frankly, it came closer while your colleague was arguing than it had in my mind before that, and I just want to be sure that we have your full response, Mr. Barca, but it's all you have. No, I appreciate that. I think that the previous colleague explored that, and we don't have anything further on that point. The only additional thing that I would say is that it's obviously the argument raised by the government in its brief that I don't believe relied on applicable case law. And so to the extent that it's a new argument relying on no applicable case law, we don't see a basis for making that argument. If no one has any further questions, hearing that. Mr. Barca, were you court appointed? I was, Your Honor. Well, thank you very much. You've done a fine job for your client. We really appreciate your efforts. How did you happen to get on our court appointment list? Thank you, Your Honor. Yes, Your Honor, I'm located in New York. Your office accepts applications to be appointed as pro bono counsel from around the country. Everywhere, okay. That's right, so I just reached out, and I asked whether there were any appointments, and you had one available, so I really appreciate the opportunity. You've got it, Billy. I'll say that for you. Thank you very much. We appreciate the argument of both counsels. Thank you.
judges: Diana Gribbon Motz, G. Steven Agee, Barbara Milano Keenan